Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PHILIP HOWLAND,<br><br>    Plaintiff,<br><br>    v.<br><br>PORTOLA PHARMACEUTICALS, INC., HOLLINGS C. RENTON, JEFFREY BIRD, LAURA BREGE, DENNIS FENTON, SCOTT GARLAND, JOHN H. JOHNSON, TED LOVE, DAVID C. STUMP, and H. WARD WOLFF,<br><br>    Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Philip Howland ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.   This is an action against Portola Pharmaceuticals, Inc. ("Portola" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the

1

"Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of Portola by Odyssey Merger Sub Inc. ("Merger Sub"), a direct wholly owned subsidiary of Alexion Pharmaceuticals, Inc. ("Alexion").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Portola's common stock.

7. Defendant Portola is a biopharmaceutical company that develops and commercializes novel therapeutics in the areas of thrombosis, and other hematologic disorders

and inflammation in Europe and the United States. The Company is incorporated in Delaware. The Company's common stock trades on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol, "PTLA."

8. Defendant Hollings C. Renton ("Renton") is Chairman of the Board of the Company.

9. Defendant Jeffrey Bird ("Bird") is a director of the Company.

10. Defendant Laura Brege ("Brege") is a director of the Company.

11. Defendant Dennis Fenton ("Fenton") is a director of the Company.

12. Defendant Scott Garland ("Garland") is President, Chief Executive Officer, and a director of the Company.

13. Defendant John H. Johnson ("Johnson") is a director of the Company.

14. Defendant Ted Love ("Love") is a director of the Company.

15. Defendant David C. Stump ("Stump") is a director of the Company.

16. Defendant H. Ward Wolff ("Wolff") is a director of the Company.

17. Defendants Renton, Bird, Brege, Fenton, Garland, Johnson, Love, Stump, and Wolff are collectively referred to herein as the "Individual Defendants."

18. Defendants Portola and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

19. Alexion develops and commercializes various therapeutic products. Alexion is incorporated in Delaware with principal executive offices located in Boston, Massachusetts. Alexion's common stock trades on the NASDAQ under the ticker symbol, "ALXN."

## SUBSTANTIVE ALLEGATIONS

A. **Background of the Company and The Proposed Transaction**

20.     On February 26, 2020, Portola issued a press release announcing its fourth quarter and full-year 2019 financial results. Portola reported total global revenues for the full year 2019 of $116.6 million as compared with $40.1 million for the full year 2018. Defendant Garland touted Portola's financial results, the Company's products, and future growth and prospects, stating, in pertinent part:

> "2019 was a year of significant accomplishments for Portola with the launch of our Gen 2 formulation of Andexxa in the United States and the approval and launch of Ondexxya in Europe. In 2020 we have several catalysts that we expect to drive further adoption and growth worldwide," said Scott Garland, Portola's president and chief executive officer. "This includes the presentation of new clinical data, enhanced education and support related to reimbursement, the initiation of our urgent surgery study, and continued execution of the Ondexxya launch in Europe. Combined with the robust growth in the Factor Xa inhibitor market and our other strategic initiatives, we are confident that Andexxa has significant long-term growth potential."

21.     On May 5, 2020, Alexion and Portola issued a press release announcing that they had entered into a definitive merger agreement for Alexion to acquire Portola. Under the terms of the merger agreement, a subsidiary of Alexion will commence a tender offer to acquire all of the outstanding shares of Portola's common stock at a price of $18 per share in cash. The press release states, in pertinent part:

**Alexion to Acquire Portola**

*– Expands and diversifies Alexion's hematology, neurology and critical care commercial portfolio with transformative Factor Xa inhibitor reversal agent –*

*– Conference call and webcast scheduled for today, May 5, at 8:00 a.m. ET –*

May 05, 2020 07:00 AM Eastern Daylight Time

BOSTON & SOUTH SAN FRANCISCO, Calif.--(BUSINESS WIRE)--Alexion Pharmaceuticals, Inc. (NASDAQ:ALXN) and Portola Pharmaceuticals, Inc.

(NASDAQ:PTLA) announced today that they have entered into a definitive merger agreement for Alexion to acquire Portola, a commercial-stage biopharmaceutical company focused on life-threatening blood-related disorders. Portola's commercialized medicine, Andexxa® [coagulation factor Xa (recombinant), inactivated-zhzo], marketed as Ondexxya® in Europe, is the first and only approved Factor Xa inhibitor reversal agent, and has demonstrated transformative clinical value by rapidly reversing the anticoagulant effects of Factor Xa inhibitors rivaroxaban and apixaban in severe and uncontrolled bleeding. The acquisition will add near-term diversification to Alexion's commercial portfolio and provides the opportunity to apply the company's demonstrated global commercial excellence to create long-term value for patients and shareholders. The merger agreement has been unanimously approved by the boards of Alexion and Portola.

"The acquisition of Portola represents an important next step in our strategy to diversify beyond C5. Andexxa is a strategic fit with our existing portfolio of transformative medicines and is well-aligned with our demonstrated expertise in hematology, neurology and critical care," said Ludwig Hantson, Ph.D., Chief Executive Officer of Alexion. "We believe Andexxa has the potential to become the global standard of care for patients who experience life-threatening bleeds while taking Factor Xa inhibitors apixaban and rivaroxaban. By leveraging Alexion's strong operational and sales infrastructure and deep relationships in hospital channels, we are well positioned to expand the number of patients helped by Andexxa, while also driving value for shareholders."

"In developing and launching Andexxa, Portola has established a strong foundation for changing the standard of care for patients receiving Factor Xa inhibitors that experience a major, life-threatening bleed. Andexxa rapidly reverses the pharmacologic effect of rivaroxaban and apixaban within two minutes, reducing anti-Factor Xa activity by 92 percent," said Scott Garland, President and Chief Executive Officer of Portola. "Given their enhanced resources, global footprint and proven commercial expertise, we look forward to working with Alexion to maximize the value of Andexxa. With their commitment to commercial excellence, together, we will be able to drive stronger utilization of Andexxa, increase penetration and accelerate adoption in the critical care setting."

**Transaction Details**

Under the terms of the merger agreement, a subsidiary of Alexion will commence a tender offer to acquire all of the outstanding shares of Portola's common stock at a price of $18 per share in cash. The tender offer is subject to customary conditions, including the tender of a majority of the outstanding shares of Portola common stock, the expiration or termination of the waiting period under the Hart-Scott Rodino Antitrust Improvements Act of 1976 and receipt of certain other regulatory approvals.

> Following successful completion of the tender offer, Alexion will acquire all remaining shares not tendered in the offer at the same price of $18 per share through a merger. The transaction is expected to close in the third quarter of 2020.
>
> Alexion will fund the transaction with cash on hand. As part of the acquisition, Alexion will also be acquiring cash currently on Portola's balance sheet, net of debt of approximately $215 million that will become due upon closing. As of December 31, 2019, cash and short-term investments were approximately $430 million. The actual amounts will be determined as of the transaction close.
>
> RBC Capital Markets, LLC served as Alexion's exclusive financial advisor. Centerview Partners served as Portola's exclusive financial advisor. Cooley LLP served as Portola's legal advisor.
>
> \*     \*     \*
>
> **About Portola**
>
> Portola is a global, commercial-stage biopharmaceutical company focused on the discovery, development and commercialization of novel therapeutics that could significantly advance the fields of thrombosis and other hematologic conditions. The Company's first two commercialized products are Andexxa® [coagulation factor Xa (recombinant), inactivated-zhzo], marketed in Europe as Ondexxya® (andexanet alfa), and Bevyxxa® (betrixaban). Portola also is advancing cerdulatinib, a SYK/JAK inhibitor being developed for the treatment of hematologic cancers. Founded in 2003 in South San Francisco, California, Portola has operations in the United States and Europe.

22.   On May 27, 2020, Portola filed a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") with the SEC in connection with the Proposed Transaction.

**B.   The Solicitation Statement Contains Materially False and Misleading Statements and Omissions**

23.   The Solicitation Statement, which recommends that Portola shareholders tender their shares to Merger Sub in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's financial projections; and (ii) the financial analyses performed by Portola's financial advisor, Centerview Partners LLC ("Centerview"), in connection with its fairness opinion.

24.   The omission of the material information (referenced below) renders the following

6

sections of the Solicitation Statement false and misleading, among others: (i) Recommendation of the Portola Board; (ii) Portola's Reasons for the Offer and the Merger; (iii) Projected Financial Information; and (iv) Opinion of Portola's Financial Advisor.

25. The tender offer in connection with the Proposed Transaction is set to expire at one minute following 11:59 p.m., Eastern Time, on July 1, 2020 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Portola's Financial Projections

26. The Solicitation Statement omits material information concerning Portola's financial projections.

27. On February 27, 2020, Alexion made a non-binding expression of interest to acquire Portola for $18.00 per share.

28. On March 6, 2020, Centerview discussed with the Board its preliminary financial analyses which were based upon non-public, unaudited prospective financial information prepared by Portola's management in January 2020 (the "Initial Long-Term Plan"). According to the Solicitation Statement, the "implied per Share equity value under the sum-of-the-parts discounted cash flow analysis based on the Initial Long-Term Plan ranged between $21.70 and $28.05."

29. On March 27, 2020, the Board convened a meeting, during which management

provided two sum-of-the-parts discounted cash flow analyses for Portola:[1] (1) one based on the Initial Long-Term Plan, as discussed with the Board on March 6, 2020; and (2) another draft analysis applying downward adjustments, resulting in a range of $18.70 and $24.65.

30.     On March 30, 2020, Alexion submitted a revised non-binding expression of interest, which was characterized as "best and final," offering to acquire Portola for $16.00 per share with an additional contingent value right of $4.00 per share that would be payable upon the full approval of Andexxa.

31.     On March 31, 2020, Defendant Garland informed an Alexion representative that the Board viewed the initial all-cash $18.00 proposal as offering stockholders superior value. Alexion's representative agreed to consider whether Alexion would still be willing to make an all-cash proposal, but stated that any such proposal would be Alexion's "best and final" proposal.

32.     On April 1, 2020, Alexion submitted a revised non-binding expression of interest to acquire Portola for $18.00 per share.

33.     Notably, Alexion's $18 per share offer was far below the implied per share equity value of between $21.70 and $28.05 that was calculated using the Initial Long-Term Plan, and lower than the range of $18.70 and $24.65 that was presented to the Board on March 27, 2020.

34.     But on April 27, 2020, the Board convened a meeting, during which management discussed updated, long-term forecasts it had prepared which were purportedly created to account for "the impact of the COVID-19 pandemic on Portola's actual financial performance and prospects and the decision to out-license to a third party ex-U.S. rights to Andexxa if Portola were to remain a standalone company" (the "Updated Long-Term Plan," and together with the Initial

---

[1] Centerview apparently previously provided these analyses to management.

Long-Term Plan, the "Management Projections").

35. On April 29, 2020, the Board convened to discuss the terms and financial implications of the proposed acquisition, which included a review of certain financial analyses related to Portola based on the Updated Long-Term Plan, including a range of implied equity values per share of $13.90 to $19.00 under a discounted cash flow analysis.

36. The Solicitation Statement provides a purported summary of the Management Projections.

37. The Solicitation Statement, however, fails to disclose the following concerning the Management Projections: (1) all line items used to calculate (i) Total Revenue; and (ii) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

38. The disclosure of this projected financial information is material in light of the aforementioned, including the timing of the creation of the Updated Long-Term Plan. Further, this information would provide Portola shareholders with a basis to project the future financial performance of Portola and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to tender their shares in connection with the Proposed Transaction.

39. When a company discloses non-GAAP financial metrics in a Solicitation Statement that was relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and

information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[2]

40. Accordingly, in order to bring the Solicitation Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the Management Projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Solicitation Statement not misleading.

41. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Portola shareholders.

### 2. Material Omissions Concerning Centerview's Analyses

42. In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by Centerview.

43. The Solicitation Statement fails to disclose the following concerning Centerview's

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited June 2, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

"*Discounted Cash Flow Analysis*": (1) all line items used to calculate the unlevered free cash flows of the Company; (2) the basis for Centerview's assumption that the unlevered free cash flows would decline in perpetuity after December 31, 2032 at a range of rates of free cash flow decline between 30.0% to 20.0% year-over-year; (3) the individual inputs and assumptions underlying the range of discount rates from 9.5% to 11.5%; (4) the impact of potential standalone tax savings from federal net operating losses; and (5) the Company's fully diluted shares outstanding.

44. With respect to Centerview's analysis of Wall Street research analysts' reports, the Solicitation Statement fails to disclose: (1) the individual price targets for Portola observed by Centerview in its analysis; and (2) the sources of those price targets.

45. With respect to Centerview's analysis of premiums paid in selected transactions, the Solicitation Statement fails to disclose the individual premiums paid in each transaction utilized by Centerview in its analysis.

46. The valuation methods, underlying assumptions, and key inputs used by Centerview in rendering its purported fairness opinion must be fairly disclosed to Portola shareholders. The description of Centerview's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Portola shareholders are unable to fully understand Centerview's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Portola shareholders.

**COUNT I**
**For Violations of Section 14(e) of the Exchange Act**
**Against All Defendants**

47. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing

11

paragraphs as if fully set forth herein.

48. Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

49. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

50. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

51. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

52. Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

53. By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

54. Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### Against All Defendants

55. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56. Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

57. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

58. SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

59. In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

60. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in

13

light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

61. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

62. Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

63. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

### COUNT III
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

64. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

14

66. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

67. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the unanimous recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

68. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

69. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

70. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C. Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 2, 2020                                            Respectfully submitted,

**HALPER SADEH LLP**

By: <u>/s/ Daniel Sadeh</u>
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
           zhalper@halpersadeh.com

*Counsel for Plaintiff*